UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO: 5:06CV-133-R

SAMUEL EUGENE WRIGHT                                                    PLAINTIFF

v.

RICHARD DEGHETTO, et al.                                               DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon the Defendants' Motion for Summary Judgment
(Docket #15).  The Plaintiff responded (Docket #16) and the Defendants replied (Docket #17).
This matter is ripe for adjudication.  For the following reasons, the Defendants' Motion is
**GRANTED**.

## BACKGROUND

On August 15, 2005, at around 11:40 p.m., while on routine patrol, Officer Richard
Deghetto ("Officer Deghetto") of the Hopkinsville, Kentucky Police Department observed a
pickup truck, driven by a man later determined to be the Plaintiff Samuel Wright ("Wright"),
traveling in the left southbound lane of Fort Campbell Boulevard in Hopkinsville.  He observed
Wright exit his vehicle and begin to yell at the driver of a white vehicle, later determined to be
his girlfriend Serena, waiting in the left turning lane.   Serena's vehicle then made a left turn onto
Skyline Drive.  Wright got back into his vehicle and made a left turn from the through lane of the
road and in disregard of the red traffic light.  Wright then headed eastbound on Skyline Drive in
pursuit of Serena's vehicle.  Wright's truck was traveling at 55 mph in a posted 35 mph zone.

Serena's vehicle was traveling in the left lane on Skyline Drive, and Officer Deghetto
observed Wright pull his vehicle into the right lane and then swerve into Serena's vehicle.
Serena's vehicle then veered towards oncoming traffic.  Officer Deghetto then initiated a traffic

stop of Wright's vehicle.  Once Officer Deghetto turned on the lights in his patrol car, the dashboard video camera turned on, and the ensuing events were captured on video.  The Court has viewed the video of the incident, and draws the following facts from its observation of the video.

On the video, after Officer Deghetto stops Wright's vehicle, Wright immediately exits his truck and approaches Officer Deghetto, telling him that he was following Serena because she had been drinking and might hurt someone.  Officer Deghetto tells the Plaintiff to get back into the car.  Wright does not immediately comply, but eventually sits sideways inside his truck with the driver's door open.

Once Officer Deghetto approaches the truck, Wright again tells him that he was trying to stop Serena.  Officer Deghetto tells the Plaintiff he understands that and is trying to get another unit to stop her.  Officer Deghetto also tells Wright that his immediate concern is the fact that he observed him make an illegal left turn, clocked him speeding, and he was endangering others by swerving into Serena's vehicle.

At this point, the Plaintiff's words become a little combative, and Officer Deghetto tells him that if he raises his voice again he will have to come out of the car.  He also tells him that he is not in the mood to joke around.  After the Plaintiff tells Officer Deghetto that he too is not in a mood to joke around, using an expletive, Officer Deghetto orders him out of the car.

The Plaintiff then becomes very combative.  Officer Deghetto orders the Plaintiff approximately ten times to put his hands on the car, and the Plaintiff just stands there, saying things like "whatever," "you need to be a little more polite," and "if you're gonna beat me, beat me."  As the situation escalates, Officer Deghetto draws his service revolver, begins ordering

Wright to get on the ground, and requests immediate backup.  He repeatedly orders Wright over fifteen times to get on the ground, during which time the Plaintiff lights a cigarette and begins smoking, staring at Officer Deghetto.  The other passengers in the truck can be heard urging Wright to comply with Officer Deghetto's orders.  At one point, Wright does tell Officer Deghetto "I'm hurt," but does not explain in what manner or elaborate any further.

Officer Lopez arrives and also draws his service pistol on Wright.  At some point Officer Lopez switches to his taser.  Wright finally gets on the ground.  Officer Deghetto orders him to put his hands at his sides, but his hands remain near his head.  Officer Deghetto grabs his right arm in order to put the handcuffs on, and Wright makes a movement with his right arm and jerks his head upward.  The video does not present a clear picture of the manner in which he moves, however.  Officer Degehtto moves away from Wright and tells Officer Lopez to "tase him."  Officer Lopez applies the taser to Wright..

After the taser is applied, Wright becomes compliant and allows the officers to handcuff him, stand him up, and take him to backseat of Officer Deghetto's car.

The record reflects that Wright claims to have been kicked in the chest by a mule earlier in the day.

On August 16, 2006, the Plaintiff filed the instant action against both Officer Deghetto, in his individual and/or official capacity, and the City of Hopkinsville ("the City") alleging that he was deprived of his Constitutional rights because Officer Deghetto used excessive force during his arrest and alleging that the Defendants' conduct constituted the torts of assault and battery and outrage or intentional infliction of emotional distress.

**STANDARD**

3

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### 1.  Violation of 42 U.S.C. § 1983

#### A.  City of Hopkinsville

The Defendants argue the City should be granted summary judgment because it is not

liable for the acts of its employee, Officer Deghetto, for any alleged violation of 42 U.S.C. §

1983.  "[A] municipality can be found liable under § 1983 only where the municipality itself

causes the constitutional violation at issue."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)

(citing *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978)).  "Respondeat superior or

vicarious liability will not attach under § 1983."  *Id*. (citing *Monell*, 436 U.S. at 694-95).

Instead, a plaintiff must establish that a city's official policies or customs were the cause of his

injuries or deprivation of rights, *Monell*, 436 U.S. at 690, and arose as a result of a "deliberate

indifference" to his rights.  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 293 (1998)

(citing *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397 (1997); *City of Canton* , 489 U.S. at

388-392).  "[D]eliberate indifference is a stringent standard of fault, requiring proof that a

municipal actor disregarded a known or obvious consequence of his action."  *Bd. of the County

Comm'rs*, 520 U.S. at 410.

     Thus, in accordance with these standards, Wright alleges in his complaint that the City

acted with the requisite deliberate indifference because "as a matter of its policies and customs,

the City of Hopkinsville ignored an apparent and continuous pattern of unlawful and

irresponsible conduct by Hopkinsville City Police Officers."  Wright alleges that the City refused

to make a legitimate effort to properly train, supervise, or discipline its police officers," and this

was the direct and proximate cause of his injuries.  However, Wright has not elaborated on his

failure to train, failure to supervise, or failure to discipline claims.

      A failure to train can create liability under § 1983, but "the plaintiff must prove . . . (1)

that the training program at issue is inadequate to the tasks that officers must perform; (2) that

the inadequacy is the result of the city's deliberate indifference; and (3) that the inadequacy is

'closely related to' or 'actually caused' the plaintiff's injury.'" *Turner v. Viviano*, 2005 U.S.

Dist. LEXIS 35119, at *10 (E.D. Mich. July 15, 2005) (discussing liability under *City of Canton*

and quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)).  The Plaintiff has

failed to meet these requirements, and has produced no evidence of a City policy or custom of

failing to take reasonable steps to properly train, supervise, or discipline its police officers, such

that the City acted with deliberate indifference to the rights of persons with whom the

Hopkinsville police come into contact.  *See City of Canton*, 489 U.S. at 388.

The Plaintiff was required to identify any expert witnesses by July 31, 2007, but failed to

do so.  The period for pretrial discovery closed on November 30, 2007.  The Plaintiff did not

attach any exhibits or cite any specific documentation to support his claims in his response to the

instant motion for summary judgment.  Thus, the Plaintiff has produced nearly nothing in the

record to substantiate his claims.

In his response to the City's motion for summary judgment, Wright alleges that Officer

Deghetto had a history of disobeying the police department's policies, and "[g]iven Deghetto's

prior history of failure to abide by policy, he should have been more thoroughly supervised.  A

reasonably jury could certainly find that Hopkinsville had a custom of not disciplining at least

this officer, if not others."  Wright, however, does not cite to a specific document or attach any

such document to his response.

Wright has not produced any evidence connecting Officer Deghetto's past activities to

his alleged acts here, nor has he produced evidence linking Officer Deghetto's alleged acts to a

custom or policy of the City.  Wright simply states, without evidentiary basis, that a jury *may* be

able to infer that the City had a custom of not disciplining Officer Deghetto, and possibly other

officers.  This is not enough to survive a motion for summary judgment.

That one officer may not be adequately trained or be subject to the type of supervision envisioned by the Plaintiff is not enough to place liability on the City, because the officer's shortcomings may be the result of factors other than the City's programs.  *See City of Canton*, 489 U.S. at 390-91.  Further, it is not enough to prove that an injury could have been avoided if the officer was better supervised or had better training, because "[s]uch a claim could be made about almost any encounter resulting in injury."  *Id.* at 391; *see also Molton v. City of Cleveland*, 839 F.2d 240, 244-45 (6th Cir. 1988).  Further, adequately trained and/or supervised officers may occasionally make mistakes; and the fact that they do does not speak to the quality of their supervision or training or "the legal basis for holding the city liable."  *Id.*  The Plaintiff, however, has not even made such allegations.

As the Plaintiff has failed to present evidence that any of the City's customs, practices, or procedures demonstrate deliberate indifference to Wright's constitutional rights, the Defendants' motion for summary judgment on the Plaintiff's § 1983 claim is **GRANTED** as to the City of Hopkinsville.

**B.  Officer Deghetto**

For the purposes of this motion, the Court will ignore the fact that the Plaintiff has failed to join the officer who actually applied the taser, Officer Lopez, as a party to this action.  However, this is not an invitation to the Plaintiff to amend his complaint to include Officer Lopez, because the following arguments regarding the Plaintiff's claims against Officer Deghetto apply with equal force to Officer Lopez.  Wright has asserted claims against Officer Deghetto in both his official and individual capacities.

7

### 1.  In his official capacity

A § 1983 "'action against a city official in his or her official capacity is treated as an action against the City entity itself.'"  *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) (quoting *Barber v. City of Salem*, 953 F.2d 232, 237 (6th Cir. 1992)).  "Local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which...a local government would be suable in its own name."  Monell, 436 U.S. at 690 n.55.  As official capacity suits are treated as suits against the municipality, in order to impose § 1983 liability on a city official the municipality's policy or custom must have played a part in the alleged violation of law.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991)

Therefore, the same analysis employed above for the City of Hopkinsville applies to Wright's claim against Officer Deghetto in his official capacity.  *See Bd. of the County Comm'rs,* 520 U.S. at 410; *City of Canton*, 489 U.S. at 385; *Monell*, 436 U.S. at 691.  As the Court has found that Wright failed to present evidence that any of the City's customs, practices, or procedures demonstrate deliberate indifference to Wright's constitutional rights, the Court must find the same with respect to the claim against. Officer Deghetto in his official capacity.  Thus, the Defendants' motion for summary judgment on the Plaintiff's § 1983 claim against Officer Deghetto in his official capacity is **GRANTED**.

### 2.  In his individual capacity

The Defendants argue that as a police officer, Officer Deghetto should be granted summary judgment as to the claim against him in his individual capacity because he is entitled to qualified immunity.

Under the doctrine of qualified immunity, "government officials performing

8

discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Feathers v. Aey*, 319 F.3d 843, 847 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Sixth Circuit has adopted a three-step inquiry for determining an appropriate defense of qualified immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Id.* at 848 (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)); *see also Saucier v. Katz*, 533 U.S. 194 (2001).

The material facts, construed in a light most favorable to Wright, are as follows.  Officer Deghetto observed Wright commit three traffic offenses in quick succession, including driving recklessly by swerving into another vehicle and causing that vehicle to swerve into oncoming traffic.  Officer Deghetto stopped Wright for those violations, and upon speaking with Wright found his responses combative.  Officer Deghetto knew Wright was concerned about his girlfriend, and told Wright another unit would stop her for driving under the influence.  There were three passengers in the vehicle with Wright.

After Wright used an expletive toward Officer Deghetto and was ordered to get out of the car, he ignored approximately ten orders to put his hands on the vehicle and over fifteen orders to get on the ground.  In response to Officer Deghetto's orders, Wright said "whatever," "you need to be a little more polite," and "if you're gonna beat me, beat me," among other things.  He also lit a cigarette and began smoking.  Wright complied with Officer Deghetto's order to get on

9

the ground after Officer Lopez arrived on the scene.

Wright was ordered to put his hands at his sides but instead left them by his head. Officer Deghetto grabbed Wright's right wrist in order to put the handcuffs on him, and in response, Wright made a movement with his right arm and jerked his head upward. Officer Deghetto then moved away from him and ordered Officer Lopez to tase him, which he did.

In the Plaintiff's own words, he acted as he did toward Officer Deghetto because the officer was being "blatantly rude," which made him decide not to put his hands on the car. Wright Depo., p. 37. Wright also said that he refused to comply with Officer Deghetto's orders because he was not given an explanation as to why he was being ordered to do so, did not like the way he was being talked to, and did not believe he should be arrested. *Id.* Wright also said that he told Officer Deghetto he was hurt and told him he would only be handcuffed standing up.

Wright has not produced medical expert testimony regarding the injury he received from the mule or the effect of the taser, nor has he produced the affidavits of any witnesses or pointed to any specific instances captured on videotape in support of his position. The Court cannot accept Wright's assertions of his subjective intentions or beliefs, but must view the facts, as captured on video, in the light most favorable to him.

### a. Occurrence of a Constitutional Violation

In conducting the qualified immunity analysis, the Court must first ask the following question: "'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Brosseau v. Haugen*, 543 U.S. 194, 195 (2004) (quoting *Saucier*, 533 U.S. at 202). Wright alleges Officer Deghetto violated his Fourth Amendment right to be free from excessive force. "[*A*]*ll* claims that law

10

enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. However, the application of the reasonableness standard requires a particularized inquiry into the totality of the circumstances, including a consideration of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

With this particularized inquiry, the reasonableness of the officer's conduct must be assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The subjective intentions of the officer are not relevant. *Id.* at 397. This allows "for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id.*

In assessing the reasonableness of Officer Deghetto's conduct and whether he employed excessive force against the Plaintiff, the Court must also consider the policy of the Hopkinsville City Police Department regarding an officer's use of a taser. Policy 2-46, regarding the use of "electronic incapacitation devices," or tasers, states that tasers may only be used "to effect control over combative or non-compliant subjects." Thus, for Officer Deghetto's decision to order Officer Lopez to apply the taser to be considered reasonable in light of the circumstances,

11

he must have reasonably believed that the Plaintiff was "combative or non-compliant."

The facts alleged, taken in the light most favorable to Wright, do not show that Officer Deghetto's conduct violated Wright's constitutional right to be free from excessive force. Prior to the application of the taser, the Plaintiff used vulgar and disrespectful language in regard to Officer Deghetto's questions and demands and ignored approximately ten orders to put his hand on the vehicle and over fifteen orders to get on the ground. Far from compliant, Wright's demeanor was generally combative and not an appropriate response to the reasonable and repeated orders of a law enforcement officer.

The Plaintiff had committed three traffic offenses in quick succession, including reckless driving that could have harmed others. Wright's continued defiance likely heightened Officer Deghetto's fear that Wright could continue to act in an unpredictable and unsafe manner. Further, there were three passengers in Wright's vehicle, all of whom remained inside during the exchange between Officer Deghetto and Wright. Officer Deghetto had no way of knowing if they were armed or if Wright had weapons inside the vehicle.

The United States Supreme Court has held that "if an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier*, 533 U.S. at 204. When Wright finally complied with orders and got on the ground, he did not put his hands at his sides as he was ordered. Officer Degehetto then grabbed Wright's wrist in order to place the handcuffs on him, and in response Wright jerked both his right arm and head. Whether or not it was Wright's intention, given the heightened intensity of the situation and Wright's combative manner, it was objectively reasonable for Officer Deghetto to interpret Wright's movement as resistance to

12

arrest and order Officer Lopez to apply the taser.

The Court finds that the facts alleged, taken in the light most favorable to Wright, do not show that Officer Deghetto's conduct violated a constitutional right.  Thus, there is no necessity to further inquire into qualified immunity.  *Id.* at 201.  Officer Deghetto is entitled to qualified immunity.  Thus, the Defendants' motion for summary judgment on the Plaintiff's claim against Officer Deghetto in his individual capacity is **GRANTED**.

**2.  State Law Intentional Tort Claims**

The Plaintiff has also alleged two state law intentional tort claims against Officer Deghetto: the tort of outrage or intentional infliction of emotional distress and the tort of assault and/or battery.  For the following reasons, the Defendants must be granted summary judgment on both claims.

**A.  Outrage or Intentional Infliction of Emotional Distress**

Under Kentucky law, a plaintiff alleging a claim of intentional infliction of emotional distress must show:

(1) intentional or reckless conduct on the part of the wrongdoer;

(2) the conduct offends against the generally accepted standards of decency and morality;

(3) a causal connection between the wrongdoer's conduct and the emotional distress; and

(4) severe emotional distress.

*Humphress v. UPS*, 31 F. Supp.2d 1004, 1014-15 (W.D. Ky.1997) (citing *Humana v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990)).  An actor incurs liability "'only where [he or she] intends to invade the interest in freedom from severe emotional distress.'" *Id.* at 1015 (quoting *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298 (Ky. Ct. App. 1993)).  The outrage element

13

requires "'a deviation from all reasonable bounds of decency [that] is utterly intolerable in civilized community.'" *Id.* (quoting *Humana*, 796 S.W.2d at 3).

While Officer Deghetto obviously intentionally ordered the use of the taser on Wright, he has failed to state a viable claim for intentional infliction of emotional distress.  Wright has not presented any evidence from which a jury could infer that Officer Deghetto's actions were motivated solely by a desire to cause him f emotional distress.  Thus, the Defendants' motion for summary judgment on the Plaintiff's claim for outrage or intentional infliction of emotional distress is **GRANTED**.

### B.  Assault and Battery

Under Kentucky law, a "battery" is any unlawful touching of another, either by the aggressor or by a substance put in motion by him.  *Fultz v. Whittaker*, 261 F. Supp. 2d 767, 783 (W. D. Ky. 2003) (citing *Humphress*, 31 F. Supp.2d at 1014 (citing *Sigler v. Ralph*, 417 S.W.2d 239, 241 (Ky. 1967)).  An individual is liable for "assault" if his acts intend to cause a harmful or offensive contact or apprehension of imminent contact. *Id.*   An "'officer making an arrest may use such force as may be necessary to make the arrest but no more.'" *Id.* (quoting *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1973)).

Further, the use of physical force by a defendant upon another person is justifiable when the defendant believes that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person.  KRS § 503.050(1) (2007).  As to law enforcement officers in Kentucky, the use of physical force is justifiable when the defendant is making an arrest and (1) believes that force is necessary to effect the arrest; (2) makes known the purpose of the arrest or believes that it is otherwise known or cannot reasonably be made known

14

to the person to be arrested; and (3) believes the arrest to be lawful.  KRS § 503.090(1) (2007).
While these state statutes are "justifications in defense of criminal charges for use of physical
force," the same principles apply to Wright's state law claim of civil assault and battery against
Officer Deghetto.  *Fultz,* 261 F.Supp.2d at 783.

The Court has already determined that Officer Deghetto acted appropriately under the
circumstances in ordering that the taser be applied to the Plaintiff.  Wright cannot maintain a
claim for assault and battery.  Thus, the Defendants' motion for summary judgment on the
Plaintiff's claim for assault and battery is **GRANTED**.

**CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment is
**GRANTED.**

An appropriate order shall issue.